**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | No. CV 05-2045-PHX-JAT |
| Michael Keith Schugg, dba Schuburg Holsteins, | **ORDER** |
| Debtor. | BK No. 2-04-13226-PHX-GBN<br>BK No. 2-04-19091-PHX-GBN |
| In re: | ADV. No. 2-05-ap-00384-GBN |
| Debra Schugg, | |
| Debtor. | |
| G. Grant Lyon, in his capacity as Chapter 11 Trustee of the bankruptcy estate of Michael Keith Schugg and Debra Schugg; Wells Fargo Bank, N.A., | |
| Plaintiffs, | |
| vs. | |
| Gila River Indian Community, | |
| Defendant. | |

  Pending before the Court are the Trustee's Motion for Summary Judgment (Doc. # 136), and the Gila River Indian Community's Motion for Partial Summary Judgment (Doc. # 137). Also pending are numerous other motions, including the Trustee's Motion to Strike (Doc. # 155), Gila River Indian Community's Motion to Strike Trustee's Summary Judgment Evidence (Doc. # 162), Gila River Indian Community's Motion to Take Judicial Notice and

for Leave to File Additional Summary Judgment Evidence (Doc. # 164), and Gila River Indian Community's Motion to Exclude Trustee's Expert Witness John Lacy (Doc. # 169).

**I.    Background**

On September 4, 2003, Michael Keith Schugg and Debra Schugg (the "Debtors") acquired an approximately 657 acre parcel of land identified as Section 16 of Township 4 South Range 4 East in Pinal County, Arizona (hereinafter "Section 16"). In 2004, the Debtors separately filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Subsequently, the bankruptcy court entered an Order jointly administering and substantively consolidating the separate bankruptcy proceedings and appointing G. Grant Lyon (the "Trustee") as trustee of the Debtors' estates.

On May 25, 2005, the Trustee and Wells Fargo Bank, N.A. ("Wells Fargo"), filed their Complaint for Declaratory Relief (the "Complaint") against the Gila River Indian Community ("GRIC"). In the Complaint, the Trustee and Wells Fargo seek a declaratory judgment that Section 16 is owned by the Debtors' estates free and clear of any claims or other adverse interests of GRIC and that Wells Fargo's lien in certain real property in the Debtors' cases is valid, perfected, and may not be avoided under any legal theory. The Trustee and Wells Fargo represent that the Complaint was a product of GRIC's contentions that Section 16 and other property rights are not property of the Debtors' estates and that Wells Fargo does not have a valid lien on any portion of the real property at issue.

On June 27, 2005, GRIC filed a motion to dismiss the Complaint and, thereafter, filed a motion to withdraw the reference. Following the Trustee's and Wells Fargo's stipulation to the withdrawal of the reference, the proceedings came before this Court. Thereafter, on March 9, 2006, the Court denied GRIC's motion to dismiss the Complaint.

On August 10, 2006, GRIC filed an amended answer to the Complaint and counterclaims against the Schuggs, the Trustee, and Wells Fargo. In the counterclaims, GRIC claims it holds aboriginal title to Section 16 and seeks declaratory relief concerning easement or right-of-way access to Section 16, and its right to use and occupy Section 16 and exercise zoning authority with respect thereto. GRIC also seeks an injunction prohibiting the

Schuggs from trespassing upon Reservation land and allotments within the Reservation to access Section 16, and damages arising from the alleged trespass.

In November 2005, the Trustee, Wells Fargo and GRIC entered into an agreement to settle the issues raised in the Complaint. As part of the resolution, GRIC agreed to purchase Section 16 for $10.3 million. On or about December 6, 2005, the bankruptcy court issued an order approving the settlement and sale.

In a separate proceeding, Michael Keith Schugg filed an appeal challenging the bankruptcy court's order approving the settlement and sale of Section 16. *See Schugg v. Lyon, et al.*, No. CV 05-4158-PHX-JAT. On December 22, 2005, this Court entered a stay barring implementation of the settlement and sale during the pendency of Mr. Schugg's appeal. On May 23, 2006, this Court granted Mr. Schugg's appeal, in part, and overruled and set aside the order of the bankruptcy court approving the settlement and sale of Section 16. *See* Doc. # 54, No. CV 05-4158-PHX-JAT.

**II.     Trustee's Motion for Summary Judgment and GRIC's Motion for Partial Summary Judgment**

In the Trustee's Motion for Summary Judgment, he moves for judgment declaring: (1) the estates of Michael Keith Schugg and Debra Schugg (the "Estates") own fee simple title to Section 16 free and clear of any adverse interests of GRIC; (2) GRIC does not have aboriginal title to Section 16; (3) the Estates and future owners have and will have legal access to Section 16 via Murphy Road and Smith-Enke Road; (4) the Estates and future owners have and will have the right to use utilities installed on Section 16 and to install or have installed additional utility services to Section 16; (5) GRIC does not have any zoning, land-use, or water-use authority over Section 16; and (6) GRIC is not entitled to any damages for trespass based on the Debtors' use of Murphy Road and Smith-Enke Road to access Section 16.

In GRIC's Motion for Partial Summary Judgment, it moves for judgment that it has retained aboriginal title to Section 16 and that there is no legal access to Section 16 across the Reservation. GRIC also requests a permanent injunction precluding the Trustee and

1  anyone else attempting to access Section 16 from trespassing on the Reservation without a
2  permit or other authorization, as well as compensatory damages, costs and attorneys' fees.
3  While GRIC maintains it is entitled to judgment on its counterclaim seeking declaratory
4  relief as to its zoning authority over Section 16, it has opted not to seek summary judgment
5  on the issue because of the fact-intensive nature of the inquiry.

6  **A.     Legal Standard**

7  Summary judgment is appropriate when "the pleadings, depositions, answers to
8  interrogatories, and admissions on file, together with affidavits, if any, show that there is no
9  genuine issue as to any material fact and that the moving party is entitled to summary
10 judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated,
11 "...against a party who fails to make a showing sufficient to establish the existence of an
12 element essential to that party's case, and on which that party will bear the burden of proof
13 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

14 Initially, the movant bears the burden of pointing out to the Court the basis for the
15 motion and the elements of the causes of action upon which the non-movant will be unable
16 to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-
17 movant to establish the existence of material fact. *Id.* The non-movant "must do more than
18 simply show that there is some metaphysical doubt as to the material facts" by "com[ing]
19 forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec.*
20 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.
21 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury
22 could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
23 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create
24 a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However,
25 in the summary judgment context, the Court construes all disputed facts in the light most
26 favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir.
27 2004).

28

**B.    Aboriginal Title**

    **1.    Introduction**

Aboriginal title "is the right of Indian tribes to use and occupy 'lands they had inhabited from time immemorial.'" *Mashpee Tribe v. Secretary of the Interior*, 820 F.2d 480, 481-82 (1st Cir. 1987) (quoting *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 234 (1985)). "Aboriginal title does not trace its roots to a written document or land grant, but is established by offering historical evidence of the tribe's long-standing physical possession" of the land. *Zuni Indian Tribe of New Mexico v. United States*, 16 Cl.Ct. 670, 671 (1989). As the definition implies, aboriginal title is not a fee simple property right; instead, it is defined as a "right of occupancy which the sovereign grants and protects against intrusion by third parties." *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272, 279 (1955). "The United States holds the fee title to aboriginally held lands, and the tribe has a right of occupancy good against all but the United States." *United States v. Pend Oreille County Public Utility District No. 1*, 585 F.Supp. 606, 609 (E.D.Wash. 1984) (*citing Oneida Indian Nation v. Oneida County*, 414 U.S. 661, 667 (1974). The "right of occupancy may be terminated and such lands fully disposed of by the sovereign itself without any legally enforceable obligation to compensate the Indians." *Id*. The right to extinguish aboriginal title to land lies exclusively with Congress, *United States v. Pend Oreille Public Utility District No. 1*, 28 F.3d 1544, 1551 (9th Cir. 1994) (*citing United States ex rel. Hualpai Indians v. Sante Fe Pac. R.R.*, 314 U.S. 339, 347 (1941)), and requires "express legislation or a clear inference of Congressional intent gleaned from the surrounding circumstances and legislative history."[1]

---

[1] The Court previously stated that GRIC ultimately bears the burden of proving that it holds aboriginal title to Section 16. *See* Order dated March 9, 2006, Doc. # 37, p. 5. GRIC argues the Trustee bears the burden of proving aboriginal title has been extinguished. GRIC cites 25 U.S.C. § 194, which provides: "In all trials about the right of property . . . the burden of proof shall rest upon the white person, whenever the Indian shall make out a presumption of title in himself from the fact of previous possession or ownership." GRIC alleges, as recognized by the Indian Claims Commission, that it exclusively used, occupied, and

### 2. **Undisputed History of Section 16**

In 1853, Section 16 became part of the United States by virtue of the Gadsden Purchase. *See* Doc. # 140, Ex. 22. In 1854, the United States reserved Section 16 as school land for the Territory of New Mexico. *Id.* at Ex. 23, p. 3 (Law of July 22, 1854, ch. 103, 10 Stat. 308, § 5). In 1863, the Territory of New Mexico was divided into the Territory of Arizona and the Territory of New Mexico. Law of Feb. 24, 1863, ch. 56, 12 Stat. 664-65. In 1873, Congress reaffirmed the reservation of Section 16 for the newly formed Territory of Arizona. *See* Doc. # 140, Ex. 24, p. 2 (Law of 1873, § 1946). The General Land Office officially surveyed Section 16 in 1876. *Id.* at Ex. 25, pp. 1-1A; Ex. 26. The survey was approved and, in 1877, officially filed by the General Land Office. *Id.* at Ex. 26, p. 67; Ex. 27.

In 1910, the Territory of Arizona was authorized to be admitted as a state to the Union. *Id.* at Ex. 28 (Act of June 20, 1910, ch. 310, 36 Stat. 557, 568-579) (the "Enabling Act"). Under § 24 of the Enabling Act, Congress confirmed that Section 16 had been conveyed as a school section to the State of Arizona, stating: "That in addition to sections sixteen and thirty-six heretofore reserved for the Territory of Arizona, sections two and thirty-two in every township in said proposed State not otherwise appropriated at the date of the passage of this Act are hereby granted to the said State for the support of common schools." *Id.*

GRIC's Reservation (the "Reservation") was first established in 1859 pursuant to the Act of February 28, 1859, ch. 66, 11 Stat. 401. *Id.* at Ex. 19. Thereafter, the size of the Reservation was modified by eight Executive Orders issued from 1876 to 1915 resulting in the current size of approximately 372,000 acres. *Id.* at Ex. 20. The land contiguous to

---

possessed Section 16 since time immemorial such that it held aboriginal title to Section 16. The Trustee does not directly dispute GRIC's allegation. Instead, the Trustee argues that GRIC, if it had aboriginal title to Section 16, no longer has aboriginal title because that interest has been extinguished. Accordingly, the Court finds for the purpose of this Order that GRIC has established a presumption of aboriginal title and that the Trustee bears the burden of proving the interest has been extinguished.

Section 16 was added to the Reservation by two of the Executive Orders: one dated November 15, 1883, and the other dated June 2, 1913. *Id.* The 1883 Executive Order added the land immediately north and east of Section 16, while the 1913 Executive Order added the land immediately south and west of Section 16. *Id.* The federal government never purported to add Section 16 to the Reservation. *Id.*

### 3. Discussion

The Trustee argues that GRIC's aboriginal title was extinguished when, in 1877, the federal government conveyed Section 16 as school land to the Territory of Arizona.[2] The Trustee cites *Zuni Tribe of New Mexico v. United States*, 12 Cl.Ct. 641 (1987), and *United States v. Atlantic Richfield Co.*, 435 F.Supp. 1009 (D.Alaska 1977), to support his argument that the conveyance of school land evidences Congress' intention to extinguish aboriginal title.[3]

In *Zuni Tribe*, the Claims Court found that the United States' grant of school land to Arizona and New Mexico, in violation of the Zunis' rights to the land, resulted in the loss of aboriginal title. *Zuni Tribe*, 12 Cl.Ct. at 660.[4] In *Atlantic Richfield*, the Claims Court stated:

---

[2]The Trustee explains that, because of the completion and filing of the survey in 1877, title to Section 16 vested in the Territory of Arizona, and aboriginal title was extinguished, in 1877. *See Andrus v. Utah*, 446 U.S. 500, 506-07 (1980) (providing that title to school land does not vest in the State until completion of an official survey). In contrast, GRIC argues that parts of Section 16 were re-surveyed after 1919 due to errors in the original survey and, as a result, Arizona's title to Section 16 did not vest until that time. However, because the Court alternatively finds, *infra,* that aboriginal title was extinguished in 1883, the dispute concerning whether title in the school land vested in 1877, or sometime thereafter, is not material. Accordingly, for the purpose of this Order, the Court will consider that title in the school land vested in 1877.

[3]*See United States v. Gemmill*, 535 F.2d 1145, 1148 (9th Cir. 1976) (stating that "[t]he relevant question is whether the governmental action was intended to be a revocation of Indian occupancy rights.").

[4]For this finding, the Claims Court relied on *Three Affiliated Tribes of Fort Berthold Reservation v. United States*, 182 Ct.Cl. 543, 390 F.2d 686, 694 (1968), in which the court held that the grant of school land, in violation of the Indian tribe's rights, was a compensable taking under the Fifth Amendment.

- 7 -

> [A]boriginal title, as opposed to Indian title recognized by treaty or reservation, is legally extinguishable when the United States makes an otherwise lawful conveyance of land pursuant to federal statute. Congressionally authorized conveyance of lands from the public domain demonstrates the requisite intent to extinguish the Indian right of exclusive use and occupancy to those lands.

*Atlantic Richfield*, 12 Cl.Ct. at 1020. Like *Zuni Tribe* and *Atlantic Richfield*, which cases the Court finds persuasive, the present case does not involve a claim of Indian title recognized by treaty or reservation.[5] The Court also finds persuasive *Gila River Pima-Maricopa Indian Community v. United States*, 27 Ind. Cl. Comm. 11, 14-15 (1972), in which the ICC recognized that GRIC's aboriginal title to certain land in south-central Arizona was extinguished when the United States surveyed, patented and disposed of it to settlers. While the present case involves the grant of school land, the Court has not been persuaded that such a distinction warrants different treatment. Finally, the Court notes that the land was granted to the Territory of Arizona for the "support of common schools," and it follows that Congress would not intend the land, to be used as a revenue generator, to be burdened with a superior right of use and occupancy such as aboriginal title. Accordingly, while the extinguishment

---

[5] In contrast, the case law GRIC cites in support of its argument that the grant of school land does not extinguish aboriginal title involved pre-existing treaties or reservations. For example, *Minnesota v. Hitchcock*, 185 U.S. 373 (1902), and *Wisconsin v. Hitchcock*, 201 U.S. 202 (1906), both involved pre-existing treaties between the United States and the respective Indian tribes providing reservation land to the tribes. On this basis, it was found that the grant of school land did not extinguish aboriginal title to the previously granted reservation land. Similarly, *United States v. Thomas*, 151 U.S. 577 (1894), involved a treaty in which the United States reserved unto the Chippewa Indians certain occupancy rights encompassing school land later granted to the State. The *Thomas* court stated that "by virtue of the treaty," the State's rights in the school land were "subordinate to this right of occupancy of the Indians." *Thomas*, 151 U.S. at 585. The only case GRIC cites that does not involve a treaty or reservation is *United States v. Pend Oreille County Public Utility District No. 1*, 585 F.Supp. 606 (E.D. Wash. 1984), wherein the court found that the "equal footing doctrine," a constitutional principle that conveys the beds and banks of navigable waters to new states, did not extinguish aboriginal title. However, that case is inapposite because the instant case involves a Congressional act conveying school land, not a constitutional principle.

of aboriginal title "cannot be lightly implied,"[6] the Court finds that GRIC's aboriginal title to Section 16 was extinguished in 1877 when Congress conveyed Section 16 as school land to the Territory of Arizona, as it "demonstrates the requisite intent to extinguish the Indian right of exclusive use and occupancy to that land." *Id*.

To bolster his extinguishment argument, the Trustee also argues that aboriginal title to Section 16 has been extinguished because the Indian Claims Commission ("ICC") ruled that GRIC lost aboriginal title to the land they occupied in south-central Arizona, including Section 16. *See Gila River Pima-Maricopa Indian Community v. United States*, 24 Ind. Cl. Comm. 301 (1970); *Gila River Pima-Maricopa Indian Community v. United States*, 27 Ind. Cl. Comm. 11 (1972). The Trustee further argues that GRIC was awarded over $6 million in compensation for the federal government's extinguishment of their aboriginal title. *See Gila River Pima-Maricopa Indian Community v. United States*, 8 Cl.Ct. 569 (1985).

In opposition, GRIC contends that the ICC does not have jurisdiction to extinguish aboriginal title. While this statement is true, *see Pend Oreille Public Utility District No. 1*, 28 F.3d at 1551, the Court finds that the ICC did not extinguish aboriginal title; instead, the ICC determined that the United States extinguished aboriginal title. Even GRIC admits this by stating that the "second phase of the [ICC proceedings] concluded with a determination that the United States had extinguished the Community's aboriginal title." *See* Doc. # 141, n. 4 (*citing Gila River Pima-Maricopa Indian Community*, 27 Ind. Cl. Comm. 11, 15 (1972)).

Further, GRIC contends that it has aboriginal title to Section 16 because the ICC proceedings excluded Section 16 from the area for which the United States paid compensation for the extinguishment of aboriginal title (the "Award Area"). GRIC supports its contention by arguing Section 16 is located within GRIC's Reservation's outer boundaries and the Reservation was excluded from the Award Area. GRIC also notes the ICC proceedings never identified Section 16 as land to which aboriginal title had been extinguished or as land for which compensation was to be paid. While it is true that Section

---

[6]*Santa Fe Pac. R. Co.*, 314 U.S. at 354.

16 was not specifically identified in the ICC proceedings, Section 16 lies completely within the boundaries of the Reservation, and the Reservation was excluded from the Award Area, the Court disagrees with GRIC's resulting conclusion that Section 16 was excluded from the Award Area and that GRIC presently possesses aboriginal title to Section 16.

In 1951, GRIC filed its petition with the ICC seeking compensation from the United States for taking a large tract of land that GRIC claimed to have exclusively used and occupied since time immemorial. *See* Doc. # 141, Ex. 7. In 1970, the ICC concluded that GRIC, as claimed in its petition, exclusively used and occupied a 3,751,000 acre tract of land in south-central Arizona until the land was taken from it. *Gila River Pima-Maricopa Indian Community*, 24 Ind. Cl. Comm. at 335. Thereafter, the ICC concluded that GRIC's aboriginal title to the land was extinguished in 1883, stating:

> The intention of the Government to assert dominion over the subject land does become manifest at the enlargement by Executive order of the Gila River Reservation in 1883. The reservation was enlarged to its present size by six executive orders subsequent to 1876. The greatest single addition was by the Executive Order of November 15, 1883 (1 Kappler 808), which enlarged it to almost its present 372,000 acres. There is an apparent attempt to make a final settlement of the Pima claims to land, and unequivocal exercise of dominion over the public domain thereafter. Therefore, the Commission has found that the date of taking in this case should be November 15, 1883, for those lands which had not been entered by white settlers before that point in time.

*Gila River Pima-Maricopa Indian Community*, 27 Ind. Cl. Comm. at 15.

In 1982, during proceedings to value the taking of aboriginal land, the Claims Court[7] found that "the perimeter of plaintiffs' aboriginal territory described in [*Gila River Pima-Maricopa Indian Community*, 24 Ind. Cl. Comm. at 311] contains a total area of 3,751,000 acres. *See Gila River Pima-Maricopa Indian Community v. United States*, 2 Cl.Ct. 12, 16 (1982). The Claims Court then determined that the Award Area excluded, *inter alia*, the "Gila River Indian Reservation" because the Reservation was tribal owned land. *Id*. After

---

[7]In 1978, when the ICC's statutory authorization expired, the proceedings were transferred to the Court of Claims. The Claims Court is the successor to the Court of Claims.

- 10 -

subtracting tribal owned land, the Claims Court calculated that the Award Area was comprised of 3,312,858 acres of land to which aboriginal title had been extinguished. *Id*.

Contrary to GRIC's interpretation of the ICC proceedings, the Court finds the logic to be irrefutable that Section 16 was included in the Award Area and the ICC did adjudicate the fact that aboriginal title to Section 16 was extinguished. The Claims Court, in determining the size of the Award Area, excluded the Gila River Indian Reservation because of its status as tribal owned land. The Reservation is considered tribal owned land by virtue of the various legislative and executive acts that created and modified the Reservation. None of the legislative or executive acts included Section 16 as a part of the Reservation. Thus, in excluding the Reservation from the Award Area, the Claims Court did not exclude Section 16 because it was not part of the Reservation as created and modified by the various acts. That Section 16 is completely encircled by the Reservation does not change the undisputed fact that Section 16 has never been made a part of the Reservation. Accordingly, the Court alternatively concludes that aboriginal title to Section 16 was extinguished in 1883 and that GRIC is precluded from now claiming aboriginal title to Section 16. *See Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 202 (9th Cir. 1991).

In sum, the Court finds that there is no genuine issue as to any material fact concerning the extinguishment of GRIC's aboriginal title to Section 16. GRIC's aboriginal title to Section 16 was extinguished in 1877 when Congress granted Section 16 to the Territory of Arizona for school land. In the alternative, the Indian Claims Commission adjudicated the fact that aboriginal title to Section 16 was extinguished in 1883 and GRIC is precluded from now claiming aboriginal title to Section 16. Accordingly, the Court concludes that GRIC does not have aboriginal title to Section 16.[8]

---

[8]The Trustee also seeks a declaration that the Estates hold fee simple title to Section 16 free and clear of any adverse interests of GRIC. While the Court finds that GRIC's aboriginal title to Section 16 has been extinguished, the Court's finding, *infra*, of disputed issues of fact concerning GRIC's alleged zoning authority over Section 16 prevents a declaration that the Estates hold fee simple title free and clear of *any* adverse interests of GRIC.

- 11 -

### C. Legal Right of Access to Section 16

The Trustee contends that the Estates have a legal right of access to Section 16 via Smith-Enke Road and Murphy Road and have a legal right of access to install and use utility lines running to Section 16. In support thereof, the Trustee argues that Murphy Road is an Indian Reservation Road that must remain open for public use; that Smith-Enke Road and Murphy Road are public rights-of-way under Revised Statute § 2477; that the Estates hold an implied easement that provides access to Section 16; and that laches prevents GRIC from enjoining the use of Smith-Enke Road and Murphy Road and from enjoining the use of the utilities installed along the roads. Countering, GRIC contends that there is no legal access to Section 16 across Reservation land. In support thereof, GRIC argues that the portion of Murphy Road at issue herein is not a public road; that Revised Statute § 2477 did not create public rights-of-way across Smith-Enke Road and Murphy Road; that there are no implied easements providing access to Section 16; and that laches does not apply to its declaratory judgment claim concerning legal access to Section 16.

The Court has reviewed the parties' submissions and finds that there are numerous disputed issues of material fact concerning access to Section 16 via rights-of-way and/or easements. Accordingly, the Court will deny summary judgment on the issue of legal access to Section 16.

### D. Zoning Authority over Section 16

The Trustee contends that GRIC does not have the authority to impose zoning and water-use restrictions on Section 16. In support thereof, the Trustee argues that Congress never delegated such authority to GRIC and that GRIC has failed to establish that the Estate's proposed use of Section 16 would have a demonstrably serious impact on GRIC's political integrity, economic security, or health and welfare. In opposition, GRIC contends that the issue is too fact-intensive for resolution on summary judgment. The Court agrees that the issue is too fact-intensive and that it presents numerous disputed issues of material fact. Accordingly, the Court will deny summary judgment on the issue of GRIC's authority to impose zoning and water-use restrictions on Section 16.

### E. Trespass on Reservation Land

Finally, the Trustee contends that the Debtors have not trespassed on Reservation land or on allotments within the Reservation. Because the Court concluded there are disputed issues of material fact concerning access to Section 16 via rights-of-way and/or easements, the Court cannot determine whether the Debtors have committed a trespass by using Smith-Enke Road or Murphy Road to access Section 16. Accordingly, the Court will deny summary judgment on the issue of trespass by the Debtors' use of Smith-Enke Road and Murphy Road.

### III. Miscellaneous Motions

Also pending before the Court are the Trustee's Motion to Strike (Doc. # 155), Gila River Indian Community's Motion to Strike Trustee's Summary Judgment Evidence (Doc. # 162), Gila River Indian Community's Motion to Take Judicial Notice and for Leave to File Additional Summary Judgment Evidence (Doc. # 164), and Gila River Indian Community's Motion to Exclude Trustee's Expert Witness John Lacy (Doc. # 169). In the motions, the parties seek to exclude certain evidence offered in support of the pending summary judgment motions. Further, GRIC seeks to supplement its summary judgment motion with additional evidence obtained after the dispositive motion deadline. In reaching the conclusions herein, the Court has not considered any of the evidence sought to be excluded or included. Accordingly, the Court will deny the pending motions seeking to exclude evidence or include additional evidence.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Trustee's Motion for Summary Judgment (Doc. # 136) is GRANTED in part and DENIED in part. It is granted to the extent the Court declares that the Gila River Indian Reservation does not hold aboriginal title to Section 16 of Township 4 South Range 4 East in Pinal County, Arizona, and denied in all other respects;

**IT IS FURTHER ORDERED** that the Gila River Indian Community's Motion for Partial Summary Judgment (Doc. # 137) is DENIED;

1     **IT IS FURTHER ORDERED** that the Trustee's Motion to Strike (Doc. # 155) is DENIED;

3     **IT IS FURTHER ORDERED** that the Gila River Indian Community's Motion to Strike Trustee's Summary Judgment Evidence (Doc. # 162) is DENIED;

5     **IT IS FURTHER ORDERED** that the Gila River Indian Community's Motion to Take Judicial Notice and for Leave to File Additional Summary Judgment Evidence (Doc. # 164) is DENIED;

8     **IT IS FURTHER ORDERED** that the Gila River Indian Community's Motion to Exclude Trustee's Expert Witness John Lacy (Doc. # 169) is DENIED.

10     DATED this 23rd day of May, 2007.

*[signature]*
James A. Teilborg
United States District Judge