WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Michael Keith Schugg, dba Schuburg Holsteins,<br><br>    Debtor.<br>_____<br>In re:<br><br>Debra Schugg,<br><br>    Debtor.<br>_____<br>G. Grant Lyon, in his capacity as Chapter 11 Trustee of the bankruptcy estate of Michael Keith Schugg and Debra Schugg; Wells Fargo Bank, N.A.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Gila River Indian Community,<br><br>    Defendant. | No. CV 05-2045-PHX-JAT<br><br>**ORDER**<br><br>BK No. 2-04-13226-PHX-GBN<br>BK No. 2-04-19091-PHX-GBN<br><br>ADV. No. 2-05-ap-00384-GBN |

Pending before the Court are the Gila River Indian Community's Motion for Entry of Final Judgment and Memorandum in Support (Doc. 321) and the Trustee's Motion to Set Rule 16 Hearing and Postpone Entry of Judgment (Doc. 320). The Gila River Indian Community also made an oral Motion to Strike during oral argument on this matter on May 21, 2012, which the Court took under advisement, and the GRIC later filed a written Motion, incorporating their oral Motion to Strike (Doc. 328). The Court now rules on the Motions.

## I.     BACKGROUND

This case was filed by G. Grant Lyon acting solely in his capacity as Chapter 11 Trustee of the bankruptcy estate of Michael Keith Schugg and Debra Schugg (the "Trustee"). The Defendant/Counter-Plaintiff Gila River Indian Community ("GRIC") is a federally-recognized Indian Community organized under Section 16 of the Indian Reorganization Act, 25 U.S.C. § 461, *et seq*.  GRIC is based on the Gila River Indian Reservation (the "Reservation"), which consists of approximately 372,000 acres in south-central Arizona, and includes members of the federally-recognized Akmil O'odham ("Pima") and Peeposh ("Maricopa") Tribes.

Between 2001 and 2003, S&T Dairy (the "Dairy") was constructed on land known as Section 16 of Township 4 South, Range 4 East in Pinal County, Arizona, comprising approximately 657 acres ("Section 16"). In or about September 2003, Michael Schugg and Debra Schugg (the "Schuggs") acquired title to Section 16. Section 16 is located wholly within the Reservation and is physically accessible by Smith-Enke Road and Murphy Road. In 2004, the Schuggs made a request to amend the Pinal County land use designation from "Rural" to "Transitional" (allowing a higher-density housing development). The GRIC objected to the amendment to the land use designation and Pinal County ultimately rejected the application.

In 2004, the Schuggs declared bankruptcy and listed Section 16 as their largest asset. During the bankruptcy proceedings, the GRIC filed a proof of claim asserting that it had an exclusive right to use and occupy Section 16, it had authority to impose zoning and water use restrictions on Section 16, and a right to injunctive and other relief for trespass on reservation land and lands to which it held aboriginal title. The Trustee then initiated an adversary proceeding seeking a declaratory judgment that the Schuggs' estate had legal title and access to Section 16. In 2005, Plaintiffs and Defendants stipulated that the reference should be withdrawn to this Court. (Docs. 29 & 30).

In 2007, this Court presided over a bench trial, where the issues to be resolved by the Court were generally as follows: (1) whether there was an easement or right-of-way via Smith-Enke Road or Murphy Road for access and utilities to Section 16; (2) whether Murphy Road was an Indian Reservation Road that must remain open for public use; (3) whether Smith-Enke Road and/or Murphy Road were public rights-of-way under Revised Statute 2477 that must remain open for public use; (4) whether the easement and/or right-of-way access (if any) to Section 16 included the right to improve the easements or install additional utilities thereon; (5) whether GRIC had the power to regulate zoning on Section 16; and (6) whether the Trustee, the Debtors, representatives of the S & T Dairy and/or their respective invitees, employees, assignees, agents or representatives trespassed on tribal or allotted lands within the Gila River Indian Community's reservation.

At the conclusion of the trial, the Court determined that Plaintiffs were entitled to legal access to Section 16 due to an implied easement over Smith-Enke Road and a right of access over Murphy Road, either because of an implied easement or because the relevant portion of the road was Indian Reservation Road that must remain open for public use, that Defendant is not entitled to exercise zoning authority over Section 16, and that no trespass occurred. The Court also determined that the GRIC's assertion of authority to control the zoning of Section 16 was not ripe for adjudication.

The GRIC then appealed to the Ninth Circuit Court of Appeals. The GRIC appealed the Court's judgment that the United States was not an indispensable party to the action, the Trustee's rights of access to Section 16, and the rejection of the Community's assertions of aboriginal title and zoning authority over Section 16. The Trustee cross-appealed the District Court's finding that Smith-Enke Road and Murphy Road were not public roads under Revised Statute 2477. The Court of Appeals affirmed in part, but remanded for further consideration of whether Murphy Road was a public Road in light of ongoing proceedings before the Bureau of Indian Affairs regarding the issue of whether Murphy Road was an

1  Indian Reservation Road open to the public.

2  After remand, the Parties filed a Joint Status Report (Doc. 314) informing the Court
3  that the Trustee had withdrawn his appeal to the Bureau of Indian Affairs regarding the status
4  of Murphy Road as a public road. The Parties agreed that, in light of this dismissal, the
5  question of whether Murphy Road was an Indian Reservation Road open to the public was
6  no longer subject to dispute in this case. In the Joint Status Report, the Parties represented,
7  "the parties agree that there are no longer any issues to be decided by this Court on remand."
8  (Doc. 314 at 2).

9  The Court then directed the Parties to jointly submit a proposed form of judgment that
10 "will close this case." (Doc. 315). When the Parties represented to the Court that they were
11 unable to agree on a proposed form of judgment, the Court ordered that each party should
12 separately file a proposed form of judgment or "motions as to why judgment should not be
13 entered at this time." (Doc. 319). Thereafter, the GRIC filed its Motion for Entry of Final
14 Judgment with a proposed form of judgment (Doc. 321) and the Trustee filed a Motion to Set
15 Rule 16 Hearing and Postpone Entry of Judgment (Doc. 320).

16 In the Motion to Set Rule 16 Hearing, the Trustee argues that entry of final judgment
17 is no longer appropriate in this case because the issue regarding the scope of the easements,
18 which this Court and the Ninth Circuit Court of Appeals previously ruled was not ripe for
19 adjudication, has recently become ripe for adjudication. The Trustee requests that the Court
20 set a Rule 16 conference to discuss the presentation of evidence on this now-ripe issue. In
21 the alternative, the Trustee requests that if the Court enters a final judgment, the Court
22 reserve jurisdiction over the issue concerning the scope of the implied easements. In
23 Response, the GRIC argues that this case is still not ripe for adjudication and a determination
24 that this case is now ripe would run afoul of the law of the case and the Ninth Circuit's
25 mandate. The GRIC requests that the Court deny the Motion to Set a Rule 16 Hearing and
26 enter its proposed Final Judgment. Accordingly, to resolve the two motions currently

- 4 -

pending before the Court, the Court must determine whether it may decide the ripeness issue, and, if so, whether the issue regarding the scope of the easements is currently ripe for adjudication.

## II. GRIC'S MOTION TO STRIKE

During oral argument, GRIC moved to strike (1) the Declaration of Paul E. Gilbert, attached to the Trustee's Motion for Hearing (Doc. 320, Exhibit 1), (2) the Declaration of Michael K. Schugg, attached to the Trustee's Response to the Motion for Final Judgment (Doc. 323, Exhibit 1), (3) the Declaration of Paul E. Gilbert, attached to the Trustee's Response to the Motion for Final Judgment (Doc. 323, Exhibit 2), and (4) the Declaration of Neal T. Pascoe attached to the Notice of Filing (Doc. 326, Exhibit 1). GRIC argues that these declarations must be stricken because they are unsworn and, thus, not in compliance with 28 U.S.C. § 1746.[1] At oral argument, the Court asked the GRIC why they were raising

---

[1]
28 U.S.C. § 1746 provides,

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> **(1)** If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

this issue for the first time at oral argument, despite the Motions having been fully briefed for over two months. The GRIC responded that they had only discovered the deficiency on the eve of oral argument.

After oral argument, the GRIC then filed a written Motion to Strike reiterating the arguments made at oral argument. The Trustee filed a Response, disputing the Motion to Strike, and filing declarations in conformance with 28 U.S.C. § 1746.

Because Declarations that are in compliance with 28 U.S.C. § 1746 have now been filed, the Court finds that the issue is now moot. However, the Court will consider the Declarations in compliance with 28 U.S.C. § 1746 (Doc. 331, Exhibits 1-4) to be the controlling documents for the purposes of analyzing the Motions pending before the Court and will consider the "non-compliant" Declarations stricken. The Court finds that this decision cannot possibly prejudice the GRIC because it admitted that it did not even discover the alleged defect until two months after briefing was completed on the Motions.

### III. LEGAL STANDARDS & ANALYSIS

#### A. The Mandate Rule

GRIC argues that the Ninth Circuit's mandate expressly addresses the issue of ripeness and, thus, this Court cannot revisit the issue of whether the scope of the easements issue is ripe in this case. District Courts "are not free to decide issues on remand that were previously decided either expressly or by necessary implication on appeal." *Michandani v.*

---

(Signature)".

**(2)** If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

28 U.S.C.A. § 1746.

- 6 -

*United States*, 836 F.2d 1223, 1225 (9th Cir. 1988). "The mandate is controlling as to all matters within its compass, but leaves the district court any issue not expressly or impliedly disposed of on appeal." *Id.*

### B. Law of the Case

GRIC also argues that this Court's prior opinion that any ruling on scope of easements would be a speculative, advisory opinion that was not ripe, and the Ninth Circuit's affirmance of that ruling, is the law of the case and thus, this issue cannot be decided by the Court in the same case. "The law of the case doctrine ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case," but "it does not bar a district court from acting unless an appellate decision has issued on the merits of the claim sought to be precluded. *U.S. v. Caterino*, 29 F.3d 1390, 1395 (9th Cir. 1994), *overruling on other grounds recognized by United States v. Scarano*, 76 F.3d 1471 (9th Cir. 1996).

The Ninth Circuit Court of Appeals affirmed this Court's finding that the issues regarding the scope of the easements were not ripe as follows:

> The Trustee asked the district court to opine on the scope of any easement. The district court held that there was no actual controversy regarding the scope of the Trustees' easement, and properly declined to issue an advisory opinion on that subject. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
>
> The Trustee has not shown that there is a live controversy with regard to the scope of any easement. There is no indication that the roads or utilities as they currently exist are inadequate to support the current use of Section 16, or that the Trustee has any intent to improve the roads or utilities. The parties may disagree in principle over what activities the Trustee may undertake on those roads, but there is as yet no particularized or imminent injury arising out of that disagreement.

*Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1074 (9th Cir. 2010).

### C. Analysis

- 7 -

While the Court agrees that the procedural posture of this case is unusual, if, in the course of the case, the scope of the issue has become ripe, neither the mandate rule or the law of the case doctrine prevent this Court from deciding whether circumstances have rendered a previously unripe decision ripe. This is because whether an issue is ripe "is peculiarly a question of timing" that can change throughout the case. Because "ripeness is assessed based on the facts as they exist at the present moment," law of the case does not prevent a Court from revisiting whether an issue in the case has become ripe. *Western Radio Servs. Co. v. Qwest Corp.,* 530 F.3d 1186, 1205 (9th Cir. 2008). While it is true that this Court and the Ninth Circuit Court of Appeals both considered whether the scope of easements claim was ripe, neither court ever decided the merits of the scope of the easements claim. Accordingly, there is no mandate or law of the case that prevents the Court from deciding the scope of the easements.

GRIC argues that, if the Ninth Circuit Court of Appeals had not remanded an issue unrelated to the scope of the easements, then judgment would have entered immediately after remand and, thus, this case would be closed and the Trustee would not be able to argue that the issue regarding the scope of the easements is now ripe for review. However, even if judgment had entered immediately, Federal Rule of Civil Procedure 60(b) would have given the Trustee an avenue through which he could have brought the issue of new evidence and changed circumstances regarding ripeness to the attention of the Court.

Even after a mandate has issued directing the District Court to enter judgment, the District Court is free to consider motions made under Rule 60(b). *See Gould v. Mutual Life Ins. Co. of New York*, 790 F.2d 769, 773 (9th Cir. 1986) (holding that once the appellate mandate has issued, the district court may consider motions made under Rule 60(b)); *Standard Oil Co. of California v. United States*, 429 U.S. 17, 18-19 (1976) (same). Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders of the district court. The Rule permits a district court to relieve a party from a final order or judgment on various

- 8 -

grounds, including 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence; 3) fraud or misconduct by an opposing party; or 4) any other reason that justifies relief from the judgment. FED.R.CIV.P. 60(b). The motion for reconsideration must be made within a reasonable time, and with respect to the first three grounds, no more than a year after the entry of the judgment, order, or proceeding. *Id.*

Similarly, a district court abuses its discretion in applying the law of the case doctrine if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (internal citation omitted).

In this case, the Trustee argues that there is new evidence on the issue of ripeness, the circumstances regarding ripeness have changed, and a manifest injustice would result if the Court does not consider the now ripe issue in this case. At the outset of this case and throughout the appeal, the Owners of Section 16 wanted to develop the property to have three houses per acre. In order for this to occur, Pinal County needed to approve a change in the zoning designation for Section 16 from Rural (allowing one house per 1.25 acres) to Transitional (allowing a higher density housing development). Pinal County eventually rejected the application to amend the land-use designation for Section 16. Based on these facts, the Court found that there were not current plans to sell Section 16 or to construct homes on Section 16 and thus, any decision about the scope of the easements to accommodate such construction would be advisory.

The Trustee asserts that the following events occurred after remand from the Ninth Circuit Court of Appeals that make this issue ripe for adjudication: The Owners of Section 16 developed a plan to develop Section 16 at 1 house per 1.25 acres, allowed by the current zoning of the property. The Owners obtained an agreement from Johnson Utilities to provide water and sewer access to Section 16 when the property is developed at one house per 1.25

- 9 -

1 acres. However, in order to comply with Pinal County regulations for obtaining development
2 permits and a subdivision plat from Pinal County, the owners must provide paved access to
3 the subdivision and install additional utility lines along the implied easements. Such
4 requirements must be fulfilled before submission of the plat map to Pinal County to obtain
5 the development permits will be allowed.

6 On December 5, 2011, the Owners met with representatives of the GRIC. At the
7 meeting, the Owners told GRIC that they want to develop Section 16 and plan to pave the
8 easements and add utility lines. The GRIC representatives responded by telling the Owners
9 that they would not allow the implied easements to be paved and would not allow the
10 easements to be used to support the traffic that would result if Section 16 is developed
11 consistent with its currently zoned use of one house per 1.25 acres. The GRIC offered to buy
12 Section 16 at its current value based on its current use as undeveloped farm land. The
13 Owners refused to sell Section 16 at its current value because they believe they are entitled
14 to develop Section 16 at one house per 1.25 acres and that the land will be much more
15 valuable once this is completed.

16 The Trustee argues that it would be manifestly unjust for the Court to refuse to decide
17 the ripeness issue because, in any future action, the GRIC will be able to assert sovereign
18 immunity, thereby preventing the Owners from ever determining the scope of the easements.[2]
19 Without deciding whether it would be a manifest injustice for the Court to review the
20 question of ripeness, the Court finds that the Trustee has presented enough facts supporting
21 a change in circumstances to allow the Court to decide whether the issue relating to the scope
22 of the easements is now ripe.

23 Accordingly, neither the Ninth Circuit's mandate or the law of the case prevent this

---

25 [2] The Court previously found that the GRIC waived sovereign immunity in this action
when it filed a proof of claim in the bankruptcy court contesting the Owner's access rights
26 to Section 16.

- 10 -

Court from deciding whether the issue regarding the scope of the easements is now ripe.

### C.     Ripeness

The ripeness inquiry has a constitutional component rooted in the "case or controversy" requirement of Article III, and a prudential component that focuses on whether the record is adequate to ensure effective review.

### 1.     The Constitutional Component

"The constitutional ripeness of a declaratory judgment action depends upon whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal quotation and citations omitted). "Under the strictest interpretation of the ripeness doctrine, all declaratory judgment claims would be suspect, because declaratory relief involves plaintiffs seeking to clarify their rights or obligations before an affirmative remedy is needed. The Supreme Court has rejected that strict conception [rather,] Article III requires that there be a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991) (internal quotations and citations omitted).

In this case, in a meeting with the GRIC, the Owners expressed their intention to pave the easements and add utility lines to the easements. The Owners assert that the GRIC refused to allow the implied easements to be paved and told the Owners that they have no legal right to pave the easements or use them for the planned development. The GRIC does not deny that this meeting occurred and that this was their position. Rather, the GRIC argues that the development is still too hypothetical for there to be an actual case or controversy for this Court to rule on. However, short of beginning to pave the easements or install the utility lines on the easements, the Court can ascertain no next step that the Owners could take before an actual case or controversy exists without potentially infringing the GRIC's rights to the

1 easements. The ripeness doctrine does not require a party to possibly infringe on another's
2 rights before an actual case or controversy exists. *See Hunt v. Richardson*, 216 Ariz. 114,
3 125 (Ariz. Ct. App. 2007) (Where Defendants alleged that Plaintiffs were responsible for
4 maintaining an easement, but refused Defendants' demand to contribute toward maintenance
5 (and Plaintiffs admitted those allegations), declaratory relief regarding responsibility of
6 maintaining easement was ripe for review); *Excel Reality Servs., Inc. v. Sutter*, No. CA-CV
7 10-0599, 2011 WL 5009513, at *4 (Ariz. Ct. App. Oct. 20, 2011) (finding that current action
8 was not ripe for review, but stating that, "i[f], at some point in the future, the [Plaintiffs]
9 attempt to improve the remainder of the easement, and such attempt is met with resistance
10 by the [Defendants], the matter will be ripe for adjudication."); *Tashakori v. Lakis*, 126
11 Cal.Rptr.3d 838, 845-846 (Cal. Dist. Ct. App. 2011) (Where Defendants told Plaintiffs that
12 they considered any use of shared driveway to be trespassing that would subject the user to
13 legal action, matter was ripe for judicial review). Accordingly, there is now a substantial
14 controversy of sufficient immediacy and reality to warrant the issuance of a declaratory
15 judgment in this case.

### 2. The Prudential Component

17 Under the prudential component of ripeness, the Court must evaluate (1) the fitness
18 of the issues for judicial decision and (2) the hardship to the parties of withholding court
19 consideration. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670 (9th Cir. 2005)
20 (internal citations omitted).

### i. The Fitness Test

22 "The purpose of the 'fitness' test . . . is to delay consideration of the issue until the
23 pertinent facts have been well-developed in cases where further factual development would
24 aid the court's consideration." *In re Coleman*, 560 F.3d at 1009. The GRIC argues that the
25 Trustee's plans for development of the farm land are too generalized and contingent for this
26 to be a live dispute. (Doc. 322 at 5). In response, the Trustee argues that it can present

- 12 -

1  evidence to the Court regarding the exact plans for the development.

2  It is unclear to the Court how the status of the Owner's development plans would
3  change the GRIC's position in this case. The Owners have represented to the Court and the
4  GRIC that the development has been planned and the next step is to improve the easements.
5  If the GRIC were to assert that it would change its position on the Owner's ability to improve
6  the easements depending on what the development plan encompassed, then further
7  development of the case would need to occur before there was a case or controversy (i.e. the
8  Trustee or Owner would present the plan to the GRIC and the GRIC would then decide if it
9  would give approval for the changes to the easements). However, that situation is not before
10 the Court. The Owners have told the GRIC that they want to improve the easements as soon
11 as possible and the GRIC has unequivocally said no. Short of questioning the credibility of
12 the Trustee's assertions that the Owners actually have a development plan for which they
13 need to improve the easements, the Court can see no further factual development that can
14 occur before the Court can consider the scope of the easements. *See Hunt*, 216 Ariz. at 125;
15 *Sutter*, 2011 WL 5009513, at *4; *Tashakori v. Lakis*, 126 Cal.Rptr.3d at 845-846.

16 **ii.    Hardship to the Parties**

17 "To meet the hardship requirement, a litigant must show that withholding review
18 would result in direct and immediate hardship and would entail more than possible financial
19 loss." *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (internal quotation and
20 citation omitted). The Trustee argues that the hardship is direct and immediate because
21 without review on the scope of the implied easements, the Owners cannot develop Section
22 16 in accordance with its current zoning and the value of the property is significantly
23 diminished. The GRIC argues that, due lack of particularized facts, any delay in the hearing
24 will not result in any direct and immediate hardship to the Owners.

25 Unless the Court decides the scope of the easements, the Owners will be unable to
26 improve the easements and thus, develop their property, unless they make an attempt to

27

improve the easements in possible violation of the GRIC's rights. Accordingly, the Owners will suffer hardship without review of the scope of the easements.

Accordingly, the Court finds that the issue regarding the scope of the easements is now ripe for review.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the GRIC's oral motion to strike and Motion to Strike (Doc. 328) is granted in part and denied in part as set forth herein. The Clerk of the Court shall strike (1) the Declaration of Paul E. Gilbert, attached to the Trustee's Motion for Hearing (Doc. 320, Exhibit 1), (2) the Declaration of Michael K. Schugg, attached to the Trustee's Response to the Motion for Final Judgment (Doc. 323, Exhibit 1), (3) the Declaration of Paul E. Gilbert, attached to the Trustee's Response to the Motion for Final Judgment (Doc. 323, Exhibit 2), and (4) the Declaration of Neal T. Pascoe attached to the Notice of Filing (Doc. 326, Exhibit 1).

**IT IS FURTHER ORDERED** that Gila River Indian Community's Motion for Entry of Final Judgment and Memorandum in Support (Doc. 321) is denied.

**IT IS FURTHER ORDERED** that the Trustee's Motion to Set Rule 16 Hearing and Postpone Entry of Judgment (Doc. 320) is granted. A Rule 16 Conference will be set by separate Order of the Court.

DATED this 25th day of May, 2012.

_James A. Teilborg_
United States District Judge